FILED

2010 Oct-04  PM 03:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     PLAINTIFF,

v.                                CASE NO. CV-09-J-1951-S

BELL MICROPRODUCTS INC.
d/b/a PRO SYS INFORMATION
SYSTEMS,

     DEFENDANT.

## MEMORANDUM OPINION

Pending before the court is the defendants' motion for summary judgment and motion for equal access to justice finding (doc. 71), memorandum in support of said motion (doc. 72), and evidence (doc. 68), to which the plaintiff filed evidentiary material and a response in opposition (docs. 79 and 80).  The defendant thereafter filed a reply (doc. 86).

### I.  Procedural History

Plaintiff commenced this action by filing an amended complaint (doc. 17) alleging that the defendants discriminated against James "Phil" Purcell on the basis of his age, as evidenced by retaliating against him for opposing age-based discrimination, transferring accounts from Purcell to younger employees, and ultimately terminating Purcell's employment.  The  plaintiff alleges that younger

employees were not transferred or terminated, and that Purcell was replaced by a younger individual, all actions which violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.   This claims are made in two counts in the Amended Complaint, one entitled "Retaliation" (Count I) and the other entitled "Age-Job Transfer-Termination" (Count II).

## II.  Factual Background

In the light most favorable to the plaintiff, the facts of this case are as follows:

Purcell was employed by Bell Microproducts, Inc., and/or Prosys Information Systems, Inc., and/or New Prosys Corp.,[1] a supplier of computer equipment to businesses, as an outside salesperson for the state of Alabama.  Purcell depo. at 35; Fiorenza depo. II at 17-18.  He was hired in April 2005 by Prosys Information Systems, Inc. ("old Prosys"), after being contacted by Scott Byers about coming to work at the old Prosys.[2]  Purcell depo. at 18-19, 57; defendant exhibit 3 to Purcell depo.  At the time he was hired, Purcell was the only salesperson defendant had in Alabama.

---

[1]As Purcell explained in his deposition, he was hired by Prosys, which was purchased by Bell Microproducts, which operated Prosys as "New Prosys."  Purcell depo. at 16-20, 25-26. Purcell's actual employer has been the subject of debate in this action, including the topic of cross-motions for summary judgment (docs. 32-35, 38-40), which the court denied (doc. 41).  For purposes of this opinion, the court does not need to determine which was Purcell's employer at the time in question.  Rather, the court has considered the evidence on the basis that all three defendants were, in fact, Purcell's employer.

[2]Scott Byers was a regional vice president.

After New Prosys Corp. ("new Prosys") took over in October 2006, Purcell's income structure was changed from an $8,000.00 per month draw with 22% commissions on gross profit, to a salary of $96,000.00 per year, plus 10% commissions on gross profit. Purcell depo. at 39-43; defendant exhibit 7 to Purcell depo. Although Purcell takes issue with evidence he was struggling to make his draw each month, he could not specify how often he failed to do so, nor could he state an average amount he earned each month. Purcell depo. at 39-40, 259; Fiorenza depo. at 149-151. Purcell saw the change in his pay structure as advantageous in the short term because it provided him with income after he had numerous accounts removed. Purcell depo. at 42-43. He further responded by email that this new salary arrangement "looks fine..." *Id*. at 196-197. However, he also asserts that if he had kept all his accounts, the original pay structure was more beneficial to him. *Id*. at 42-43. When asked if this change resulted in reduced income to him, Purcell was unsure. *Id*. at 45.

Purcell then became the HP practice manager, a position which was created for him in April 2007 and which was described as a promotion.[3] Purcell depo. at 28, 32-

---

[3]Defendants are resellers of Hewlett Packard ("HP") and other computer manufacturers' products. *See e.g.,* Wilkinson depo. at 45. Drummond explained many large manufacturers wanted one person dedicated to their products, and in this case HP has requested an individual to be designated as such by defendant. Drummond depo. at 74-75. Additionally, HP offered incentives and rebates for participation in various programs. Fulghum depo. at 37-38. In the HP practice role, Purcell was supposed to ensure defendants were taking advantage of all these

34, 36.  At that time his remaining accounts were transferred to Richard Shepard, whom Purcell believed to be 40 or 41 years old.  *Id*. at 299-300.  Purcell was terminated in June 2007, when he was informed that his job had been eliminated.  Purcell depo. at 28, 283-284; defendant exhibit 8 to Purcell depo.

At the time of his termination, Purcell was approximately 58 years old.  Defendant exhibit 2 to Purcell depo.  Purcell's supervisor at the time was in his 50s as well.  Fulghum depo. at 69.  Purcell does not dispute that new Prosys was trying to eliminate jobs.  Purcell depo. at 76; *see also* Drummond depo. at 83-84; Wilkinson depo. at 66.  Joe Fiorenza, Human Resources Director for New Prosys,  noted that Purcell was one of several employees laid off at that time, pursuant to instructions given in early June[4] to all Bell Microproducts subsidiaries to reduce the work force

---

opportunities.  *Id*.  HP partially funded these positions through marketing dollars.  Byers depo. at 142.

[4]Plaintiff's representation that "Byers and Drummond knew that another round of layoffs with the company was imminent, and a non-sales position such as Purcell's new position would be vulnerable...."  Plaintiff's brief at 18, is a gross misrepresentation of the deposition testimony.  Drummond's testimony on page 82 of his deposition, as cited by the plaintiff reflects Drummond was asked "Do you recall how you learned that Mr. Purcell would possibly be terminated?" to which Drummond responded, "No.  I knew that we were getting ready to go through a force reduction ... but I don't remember when I first learned that Phil was going to be terminated."  Continuing onto the next page of the deposition, Drummond was asked "– you weren't involved in any discussions that led to Mr. Purcell's being chosen in a reduction in force?" to which Drummond responded "No, sir.  That was not my responsibility."  Drummond depo. at 82-83.  The plaintiff also relies on Byers' testimony, however, Byers testimony was solely that from the time defendant Bell took over Prosys, there were reductions in force every quarter.  Byers depo. at 150-152.  It certainly does not state that Byers "knew" Purcell's new position would be vulnerable to a reduction in force.  Plaintiff's representation that "defendants have identified Drummond as the person who recommended Purcell's discharge, and Byers as one of two who

by five percent.[5]  Fiorenza depo. at 58, 127-128, 139.  Approximately 30 people were

terminated for reduction in force purposes from 2007 through 2009. Wilkinson depo.

at 67-68.

Purcell was not aware of anyone actually replacing him after his termination.

Purcell depo. at 36.  He further stated when asked if he thought he was terminated due

to his age:

> ... I'm not – I'm not sure that was the only reason.  You asked me if I
> lost it because of my age.  There may have been some other reason, but
> I do believe that that was a factor in it....
>
> ....  And the way it appeared to me, I – the way it appeared to me is every
> time I discussed something regarding age related, I went through a
> change that I did not necessarily agree with.

*Id*. at 70-71.  As an example, Purcell stated that he talked with Scott Byers about his

commissions, and at the same time mentioned that Keith Drummond referred to him

as "old" and "old guy" in front of other people, and that Keith never apologized for

---

made the final decision. (Ex 6 to Fiorenza Bell dep (Bates-stamped doc. 0023))" is unsupported by Exhibit 6 (an email from Lee Fulghum announcing Purcell will be the HP practices manager), any other evidence before the court, and contradicted by the evidence actually submitted.  See e.g., Purcell depo. at 189 (When asked who specifically made an unlawful employment decision, Purcell responded he did not know).

[5]Danny Loria, selected for lay-off, was around 40 years old at the time, while Chad Gasaway, similarly laid off at the same time, was about 35 years old.  Fiorenza depo. at 142-143.  Also on Fulghum's team, and not selected for lay off, were Bill Byrd, who is in his 60s; Paul Garey, late 50s, Will Metz, in his 40s, Jason McNeill, John Allen, Tom Patterson, all in their 30s, Charles Tyler, in his 40s, and Chris Patterson, in his 40s.  Fulghum depo. at 67, 69.

this.[6]  *Id*. at 82, 104, 106-109, 175.  Each of these comments was during the same May 2006 meeting.  *Id*. at 122-123, 126-127, 304.  Fiorenza thought the comments were actually made in the context of "we old guys need to teach these young guys how to sell..."  Fiorenza depo. at 174-75.

Purcell complained to Scott Byers about the comments the following day. Purcell depo. at 131, 314-315.  He asserts that soon thereafter, he had some of his most profitable accounts taken away from him.  *Id*. at 311-313, 316-317, 320-323. Fiorenza noted that Drummond was hired about this time, and spoken to about what to do with Purcell because his production was "hit and miss."  Fiorenza depo. at 158-160.

Purcell complains that he lost income when many of his accounts were reassigned to Jim Gilliam, who was hired in May 2006.[7]  Purcell depo. at 157, 172. Purcell believes these accounts were transferred in response to his complaint about Drummond's comment because the first set of accounts was transferred right after he spoke with Byers about these comments, also in May 2006.  *Id*. at 170-172, 180-181.

---

[6]Keith Drummond was hired in May 2006 as a sales manager, and plaintiff's supervisor. Plaintiff depo. at 103-104.  Plaintiff believed him to be over 50 years old.  *See* defendant exhibit 25 to Purcell depo.  Drummond was terminated by defendants in November 2009.  Drummond depo. at 14.

[7]Purcell testified that he and Gilliam were about the same age.  Purcell depo at 241; *see also* defendant exhibit 25 to Purcell depo.  Gilliam resigned from defendant's employ in November 2007.  Fiorenza depo. at 198-200.

He further states Gilliam should not have been assigned any accounts that Purcell had ever serviced.  *Id*. at 193.

Drummond stated because defendant was doing a lot of business in Huntsville, an office was opened there and staffed by Jim Gilliam, and the majority of Huntsville accounts were moved to Gilliam.  Drummond depo. at 65-66.  Prior to this, all the accounts in Alabama were Purcell's because he was the defendant's only salesman in Alabama.  Drummond depo. at 66; Fiorenza depo. at 146.  An attempt was made to divide Alabama into two regions after Gilliam was hired.  Drummond depo. at 66.

In addition to the May 2006 "old" comments, the plaintiff states that in August 2006, Chase Wilkinson sent out an e-mail that he was going to hire a person as an engineer who was "younger."[8]  Purcell depo. at 174, 326-327.    The e-mail is actually a summary of his notes on a series of interviews, sent to the Prosys employees.  Defendant exhibit 22 to Purcell depo.; Wilkinson depo. at 56.  He states that his number one pick for the position is "Younger (23) – Diverse skill set for that age."  Defendant exhibit 22 to Purcell depo.  In response, Purcell sends an email to Byers stating only "Younger?????"  *Id.*  Purcell informed Byers he was very sensitive to such comments after Drummond's comments.  Purcell depo. at 230-231.  When the plaintiff mentioned this to Byers again in September 2006, more of his accounts were

---

[8]Wilkinson resigned from defendant's employ in October 2009.  Wilkinson depo. at 10-11.

removed and he was given a reduced commission with a guaranteed salary.  Purcell

depo. at 174-175, 338.  No one else was given a base salary, so Purcell was "getting

– basically at the beginning of the year you're getting $96,000 more than anybody

else in the company, guaranteed."  Byers depo. at 133-134.

At the same time, Purcell was given the Retirement Systems of Alabama

("RSA") account.  Byers depo. at 135.  As Byers explained:

> RSA, Retirement Systems of Alabama, and anybody tied to RSA, or any
> account that Phil had worked – so if you know RSA, they have heavy
> influence within Alabama on the university system, the state and local
> government.  They own Raycom, et cetera.  We made Phil – Don Bell
> wanted to have an RSA sales rep because RSA made comments.
>
> RSA funded the purchase of ProSys for Bell through a credit line,
> whatever.  RSA was going to start doing business with us.  We needed
> to have one interface for RSA.  Don Bell wanted that.  We gave Phil that
> position, and hence that's why we gave him a base salary.
>
> .... So in order to do so, you know, we had to we had to take a lot of
> accounts away from him, give him RSA and accompanying accounts,
> and that's what he worked.

Byers depo. at 135-136.

In March 2007, Purcell told Scott Byers he was not getting commissions on

some accounts he had sold, and that he would not miss the money so badly had other

accounts not been removed from him after he complained about Keith Drummond's

"old" comments.[9]  Purcell depo. at 132.  Purcell was then moved to the HP practice manager job, which Byers described as a promotion.  *Id*. at 82, 114, 176.  The decision was made by Scott Byers, Lee Fulghum and Bruce Keenan.[10]  Drummond depo. at 75; Byers depo. at 139.  This moved Purcell from Drummond's supervision to Lee Fulghum's.[11] Drummond depo. at 73.  Purcell appeared excited about this opportunity because he and Fulghum were close.  Byers depo. at 145.  The remainder of Purcell's accounts were split between Gilliam and Richard Sheppard.  Drummond depo. at 78.

Fulghum was informed by Byers that his team needed to be reduced by two. Fulghum depo. at 54.  Fulghum stated the selection of Purcell for lay off had nothing to do with his job performance, that Purcell was not replaced, and that the duties of his position were absorbed back by the people who had performed them previously. *Id*. at 51-52.

When asked who specifically made an unlawful employment decision, Purcell responded he did not know.  Purcell depo. at 189.  Purcell stated no one at defendants ever said a single account was transferred away because of his age.  *Id*. at 231.  He

---

[9]Drummond has no independent recollection of making these comments, but did state he refers to himself as "an old guy" a lot.  Drummond depo. at 48-49, 52.

[10]At the time, Bruce Keenan was the CEO of New Prosys.  Fiorenza depo. at 88. Fulghum was over the data management practice.  Fulghum depo. at 22.

[11]As Fulghum explained, he actually managed all Georgia employees, but because he had worked for HP for twenty years and retired from there, he had "loose responsibility for our HP technical relationship across the country."  Fulghum depo. at 25.

also agreed that Wilkinson had no authority over him and could not transfer his accounts.  Purcell depo. at 218; Wilkinson depo. at 59-60.  He further has no basis for thinking age was a factor in Wilkinson's hiring decision.  Purcell depo. at 230.

In his EEOC charge filed November 9, 2007, Purcell asserts he was the victim of age discrimination and retaliation.  Defendant exhibit 2 to Purcell depo.

### III.  Standards for Evaluating a Summary Judgment Motion

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson Worldwide, Inc.*, 525 F .3d 1139, 1143 (11th Cir.2008). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant.  *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993).  However, all "doubts" need not be so resolved.  *Barnes v. Southwest Forest Industries, Inc.,*  814 F.2d 607, 609 (11th Cir.1987).  Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential

to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir.2005).

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for

summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## IV.  Discussion

The plaintiff claims that he was retaliated against for complaining about age based comments, and that he suffered disparate treatment based on his age in that he was transferred and then terminated when younger employees were not.  The ADEA makes it unlawful for an employer to fail or refuse to hire or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age.  29 U.S.C. § 623(a)(1); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000).  Liability depends on whether the plaintiff's age actually motivated the employer's decision.  His age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000) (citations omitted).  To evaluate ADEA claims based on circumstantial evidence, this court must use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *Reeves*, 530 U.S. at 141, 120 S.Ct. at 2105; *Turlington v. Atlanta Gas Light Company*, 135 F.3d 1428, 1432 (11th Cir.1998).

### *Retaliation*

As to the plaintiff's complaints of retaliation, he states that in response to opposing an age-related comment in May 2006, and a wholly separate comment in August 2006, he had accounts removed and given to other salesmen.  The plaintiff claims the defendants retaliated against Purcell in response to his complaints that Drummond referred to him as "old" or "old guy."  According to plaintiff, Purcell complained to Byers about Drummond's comments and accounts were then removed from Purcell and given to Gilliam.  The plaintiff fails to specify any particular person who actually took the specific actions he claims were taken in retaliation for his complaints.

To establish a prima facie case of retaliation, the EEOC must show that: (1) Purcell engaged in statutorily protected expression; (2) the defendants subjected Purcell to an action that a reasonable employee would have found to be materially adverse; and (3) there is some causal relation between the two events. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006).  If a plaintiff demonstrates a prima facie case of retaliation under the ADEA, the claim continues to be analyzed using the *McDonnell Douglas* burden shifting framework. *See Crawford v. City of Fairburn,* 482 F.3d 1305, 1308 (11th Cir.2007).  Thus, the burden then shifts to the employer to proffer a legitimate,

non-retaliatory reason for the adverse action and then to the plaintiff to show that the employer's proffered reason is merely pretext for retaliation.  *Id.*

To establish that a plaintiff engaged in statutorily protected expression, the Eleventh Circuit requires, under these facts, that the EEOC must show that Purcell "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1311-1312 (11th Cir.2002) (citing *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997)) (citing *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989)).   In *Little*, this standard was succinctly described as follows:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Weeks*, 291 F.3d at 1312, citing *Little*, 103 F.3d at 960.

In the facts before this court, the plaintiff has wholly failed to address the subjective or objective reasonableness of Purcell's belief that his employer was engaged in unlawful employment practices.   Purcell does not even state that his

employer was engaged in unlawful employment practices, but only that he did not like being referred to as "old guy."   Stray ageist comments, however, especially those made outside the decision-making process, such as Drummond's, are typically insufficient alone to prove pretext. *See, e.g., Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1079 (11th Cir.2003)(*quoting Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J. concurring)) ("statements by nondecision- makers, or statements by decisionmakers unrelated to the decisional process at issue will not satisfy the employee's burden."); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655-658 (5th Cir.1996)(finding a statement by the decisionmaker that another employee was "old" to be insufficient to establish a prima facie case of age discrimination).

A close temporal proximity between the protected activity and the adverse action may be sufficient circumstantial evidence of a causal connection.  However, the court must also examine whether the decisionmaker had notice of the protected activity. *Strickland v. Water Works & Sewer Bd. of Birmingham*, 239 F.3d 1199, 1207-08 n. 10 (11th Cir.2001). If the decisionmaker lacked notice of the protected activity, there can be no causal connection.  *Id*. at 1207. There is also a lack of a causal connection when an employer makes a decision before the protected activity occurs and then proceeds with that decision. *See Clark County Sch. Dist. v. Breeden*,

532 U.S. 268, 272, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001) (holding that where an employer contemplated transferring an employee before the employer learned that the employee filed a Title VII suit, the employer's decision to proceed "along lines previously contemplated, though not yet definitively determined" did not establish evidence of causality).

Even assuming the Purcell's complaints to Byers were in fact protected expression, each time accounts were shifted from Purcell, defendant have demonstrated a pre-existing legitimate reason for such actions.  In May 2006, Gilliam was hired as an additional Alabama salesman.  According to the defendants, Alabama was to be split into two territories, and Gilliam was given half. The plaintiff offers no evidence to demonstrate this did not occur until after the plaintiff complained to Byers about Drummond's comments.  Rather, the evidence establishes Gilliam was hired prior to Drummond even making the comments.  *See e.g.*, Drummond depo. at 23 (stating Gilliam was hired prior to Drummond).  Again in August and September 2006, there were legitimate business reasons to remove accounts from Purcell and hope that he focused on the RSA account.  In March 2007, the defendants again established a legitimate reason for removing Purcell's remaining accounts, namely a transfer to a new position that Purcell accepted.

Given the evidence before the court, any causal connection between Purcell's complaints about Drummond's comments in May 2006 and Wilkinson's email in August 2006, is wholly lacking.  The court therefore finds the plaintiff has failed to establish a causal connection sufficient to support a prima facie case of retaliation.

### *Disparate Treatment Claim*

To establish his prima facie case under the ADEA for disparate treatment, the plaintiff must take adverse action against an employee "because of such individual's age." 29 U.S.C. § 623(a). *See Gross v. FBL Financial Services, Inc.*,  129 S.Ct. 2343, 2350 (2009), citing *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 654, 128 S.Ct. 2131, 2141-2142, 170 L.Ed.2d 1012 (2008) (recognizing that the phrase, "by reason of," requires at least a showing of "but for" causation (internal quotation marks omitted)); *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 63-64, and n. 14, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) (observing that "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition" and that the statutory phrase, "based on," has the same meaning as the phrase, "because of" (internal quotation marks omitted)(other citations omitted).  The Court unequivocally stated:

> We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action. The burden of persuasion does not shift to the employer to show that it

would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

*Gross v. FBL Financial Services, Inc.*,  129 S.Ct. 2343, 2352 (2009).

When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).   That is, the plaintiff's age must have "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome."  *Reeves v. Sanderson Plumbing Products, Inc*.,  530 U.S. 133, 141, 120 S.Ct. 2097, 2105 (2000), citing *Hazen.*

Applying this to the facts before this court, the plaintiff must demonstrate that but for his age, Purcell would not have been selected for the reduction in force.  The plaintiff has failed to provide any evidence from which a reasonable finder of fact could reach this conclusion.  Under this framework, the plaintiff must still establish a prima facie case of "an ADEA violation ... by showing that he (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a younger individual" or that similarly situated younger employees were treated more favorably. *Chapman*, 229 F.3d at 1024.

18

Assuming solely for purposes of this opinion that the EEOC met its burden to establish disparate treatment, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Harris v. Shelby County Board of Education,* 99 F.3d 1078, 1083 (11th Cir.1996). "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by the defendant were a pretext for discrimination." *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir.1991), *cert. denied*, 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992).

In the light most favorable to the non-moving party, the evidence establishes that in May 2006, Purcell took offense at a comment made by Drummond. Shortly thereafter, the plaintiff had accounts removed from him. In August 2006, Purcell took offense at an email description of a candidate for employment made by Wilkinson. Shortly thereafter, more accounts were removed from Purcell and his pay was restructured, but Purcell did assert this resulted in a loss of pay. Finally, in March 2007 Purcell was transferred to a non-sales position and placed under the supervision of Fulghum. In June 2007 Fulghum selected Purcell for a reduction in force.

While the plaintiff can establish Purcell was within the protected age group and he was qualified for his position, wholly missing is any evidence from which a

reasonable factfinder could conclude an intent to discriminate on the basis of age. *See Early*, 907 F.2d at 1082. The defendant asserts that at the time Purcell was promoted into the HP practice position, the reduction in force had not been announced. Additionally, the defendants have provided testimony both that HP wanted such a position created, and that HP had all sorts of incentives that could be obtained if a person was dedicated to HP. Defendant's memorandum, at 20. This is a legitimate business decision, which this court should not second-guess. *See Alexander v. Fulton Co.*, 207 F.3d 1303, 1340 (11th Cir.2000) (stating it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not improperly motivated).

The defendant's burden at this point is merely one of production, it does not have to show that the reasons set forth actually motivated the employment decision. *Chapman,* 229 F.3d at 1024, quoting *Combs*, 106 F.3d at 1528. Because the defendant had legitimate, nondiscriminatory reasons for its actions, the presumption of discrimination is eliminated and the plaintiff has "the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1528.

The plaintiff has failed to demonstrate Purcell was selected for the reduction in force, or in any other way, treated differently because of his age.   The evidence establishes that Purcell was recruited by Byers to work for defendants, and at the time Byers hired Purcell, Purcell was already over 50.   While the plaintiff asserts Byers was instrumental in selecting Purcell for the reduction in force, this assertion is contradicted by the evidence before the court.   However, even assuming plaintiff's assertion to be true, a plaintiff faces a "difficult burden" when the decisionmaker involved is over age forty and within the class of persons protected by the ADEA.[12]

---

[12]Addressing a strikingly similar fact pattern, the Southern District of Florida found as follows:

> Several courts have found that where, as here, "the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991); see also Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir.1996); *Lowe v. J.B. Hunt Transport*, Inc., 963 F.2d 173, 174-75 (8th Cir.1992). ....

> As the United States Court of Appeals for the Fourth Circuit noted in *Proud v. Stone*:

>> "[C]laims that employer animus exists in termination but not in hiring seem irrational." From the standpoint of the putative*1355 discriminator, "[i]t hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job."

> *Proud*, 945 F.2d at 797 (quoting Donohue & Siegelman, *The Changing Nature of Employment Discrimination Litigation*, 43 Stan. L.Rev. 983, 1017 (1991)).

> The *Lowe* court further explained: "The most important fact here is that the plaintiff was a member of the protected age group both at the time of his hiring

*See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir.1991) (explaining that the plaintiff's burden to show that the discharge is motivated by age is more difficult when the decisionmaker is also within the class protected by the ADEA). Like Purcell, Drummond and Fulghum were both over fifty and within the class of people protected by the ADEA.  The fact that Purcell was over fifty when he hired, over fifty when he was terminated, and that Fulghum was over fifty when he selected Purcell for the reduction in force, permits a "permissible inference" that no discrimination occurred. *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1442-1443 (11th Cir.1998); see also *Grossmann v. Dillard Dep't Stores, Inc.*, 109 F.3d 457, 459 (8th Cir.1997)(stating that the plaintiff's contention that the decisionmaker who had hired her had "suddenly turned against older workers four years" after he had hired her and discharged her due to age discrimination was "more than reasonable people can swallow").

The plaintiff's generalized assertion that Purcell's supervisors knew there would be a reduction in force two months later, and that the position Purcell was given would be susceptible to that as yet non-existent reduction in force, and that therefore Purcell was offered and accepted a position paying $96,000.00 per year, all

---

and at the time of his firing, and that the same people who hired him also fired him." *Lowe*, 963 F.2d at 174.

*Dingman v. Delta Health Group, Inc.*,  26 F.Supp.2d 1349, 1354-1355 (S.D.Fla.1998).

22

because of his age, is insufficient to rebut the defendant's stated nondiscriminatory reasons. Ultimately, the court is left with no more than the plaintiff's assertion that Purcell really was terminated because of his age, in spite of the lack of evidence to establish such a fact.[13] This is insufficient for the plaintiff to meet its burden of showing pretext. *Lee v. GTE Florida*, 226 F.3d 1249, 1254 (11th Cir.2000). The defendants established legitimate business reason for creating the HP position, and a legitimate business reason to place the plaintiff in that position. The plaintiff's argument that this is not so is not sufficient for the plaintiff to show pretext.

The plaintiff has wholly failed to produce any evidence from which a fact finder could determine his age played any role in his selection for a reduction in force. As such, this court finds that summary judgment is due to be granted in favor of the defendant and against the plaintiff on this claim of the complaint.

## V. Conclusion

This court having considered all of the evidence, memoranda and briefs and the court finding that the defendants' motion for summary judgment (doc. 71) is due to be granted on the plaintiff's second amended complaint;

It is therefore **ORDERED** by the court that said motion be and hereby is **GRANTED** on the plaintiff's claims and judgment shall be entered in favor of the

---

[13]This is especially true given defendants retention of Bill Byrd, who was in his 60s. Fulghum depo. at 67, 69.

defendants and against the plaintiff by separate order.   The court shall deny defendants' motion for a finding in their favor pursuant to EAJA.

**DONE** and **ORDERED** this the 4th day of October, 2010.

_____

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE